IN RE:

CLINT AUSTIN LOVETTE,	Case No.   20-01740-DSC7

    Debtor.	Chapter 7

KAPITUS SERVICING, INC.,
as agent for Kapitus LLC,

    PLAINTIFF,

v.	ADV. PRO. NO. 20-_____

CLINT AUSTIN LOVETTE,
an individual,

    DEFENDANT.

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF
DEBT OWED TO KAPITUS SERVICING, INC.**

    Plaintiff, Kapitus Servicing, Inc. as agent for Kapitus LLC, ("Kapitus"), by its undersigned attorneys, files this Complaint under Sections 523 of Title 11 of the United States Code requesting a money judgment against Defendant, Clint Austin Lovette, the debtor herein (the "Debtor") and object to the dischargeability of a pre-petition debt owed to Kapitus, and in support thereof alleges as follows:

**JURISDICTION AND VENUE**

    1.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is brought pursuant to 11 U.S.C. §§ 523(a) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2. This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334.

3. Venue is proper pursuant to 28 U.S.C. § 1409(a).

4. If the Court should find that this is not a core proceeding, Kapitus consents to entry of final judgment by the Court pursuant to Fed. R. Bankr. P. 7008.[1]

5. This Adversary Proceeding is brought in connection with the Chapter 7 case filed by the Debtor as case number 20-01740-DSC7, now pending in this Court.

6. Pursuant to Fed. R. Bankr. P. 4007(c) and the *Notice of Chapter 7 Bankruptcy Case* (Doc. 7), August 14, 2020 is the deadline for the filing of complaints objecting to discharge and for determination of dischargeability of debts. This Complaint, therefore, is timely filed.

## PARTIES

7. The Debtor is an individual residing in the state of Alabama at 655 Bluff Park Road, Birmingham, Alabama 35226.

8. The Debtor is or was, at all relevant times, 100% owner and sole member of Lovette Properties, L.L.C. d/b/a Lovette Design Build and Lovette Construction, an Alabama limited liability company ("LP").

9. Kapitus is a Virginia corporation with principal offices located in Arlington, Virginia and in New York, New York.

10. Service may be obtained on the Debtor by mailing a copy of the summons and complaint to the Debtor at the address shown on his petition and by service, via first class mail, on Debtor's attorney pursuant to Fed. R. Bankr. P. 7004(b)(9) and (g).

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Kapitus's rights, defenses and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

4811-6157-0759v2

2

# FACTS

### A. Transaction Documents

11. Pursuant to that certain *Loan Agreement* dated December 19, 2019 and that certain *Security Agreement and Personal Guaranty* (collectively, the "Agreement"), Kapitus loaned $192,000 to LP, which was guaranteed by the Debtor. A true and correct copy of the Agreement is attached as **Exhibit A**.

12. Pursuant to the terms of the Guaranty, Debtor unconditionally guaranteed to Kapitus, among other things, LP's payment and performance of all of the representations, warranties and covenants in the Agreement. Exh. A (Agreement) at 14.

13. Kapitus perfected its security interest in the collateral granted by the Agreement by filing a UCC-1 Financing Statement with the Alabama Secretary of State at File Number 19-0675721 (the "Financing Statement").

### B. Debtor's Misrepresentations Prior to the Entering the Agreement

14. At all times relevant hereto, Debtor controlled LP, and made all decisions and statements to Kapitus relevant to the issues herein.

15. Prior to entering into the Agreement with Kapitus, and in order to induce Kapitus to advance funds under the Agreement, Debtor executed and presented to Kapitus a *Working Capital Application* and an *Account Verification Form* (collectively, the "Application") and represented to Kapitus that

- he was the 100% owner of the business;
- that he has been in ownership of the business for 15 years;
- the business' average bank balance was $100,000;
- the business had monthly gross revenue of $100,000 to $250,000 with annual business revenue of $3,000,000;
- that the business has no insufficient fund days during any month; and
- he was seeking to use the funds for renovation of its showroom.

A true and correct copy of the Application is attached as **Exhibit B**.

16.     Prior to funding under the Agreement, Debtor also executed a *Representations and Acknowledgments* form ("R&A") attached hereto as **Exhibit C**, pursuant to which the Debtor acknowledged and represented to Kapitus that

- He was the authorized representative of LP;
- He was the authorized signatory on the business bank account;
- LP did not and would not have financing products that obligated the business to make payments on a less than monthly basis without approval from Kapitus;
- He did not anticipate closing the business for any reason over the next 12 months;
- He did not plan to file for bankruptcy protection in the next 12 months for either the business or him personally;
- Neither the business nor the Debtor was in arrears with their landlord or any other creditors or taxing authorities; and
- All information that the Debtor provided to Kapitus to obtain financing accurately reflected the current ownership of the business, business status and/or financial condition of the business.

17.     Pursuant to the R&A, the Debtor also acknowledged that "I submitted the statements herein with the intent to obtain financing, Kapitus is relying on such statements to determine whether to approve the financing and that any false statements or misrepresentations made to obtain funding constitute fraud and will subject me and my business to legal action."

18.     Upon information and belief, at the time the Agreement was being negotiated LP and the Debtor were behind on payments to other creditors and financial institutions.

19.     In fact, according to the Debtor's representations in its and LP's bankruptcy

schedules (Doc. 6; Case No. 20-01742-DSC, Doc. 1) despite the Debtor's representations that the company generated monthly revenues of up to $250,000 and had zero insufficient balance day, by the end of March, 2020, the company was shuttered, generating no income, insolvent and subject to multiple lawsuits and astronomical defaulted debts to all sorts of creditors including Kabbage, upon information and belief, a working capital lender.

20. Upon information and belief, contrary to the representations to Kapitus during the application process, the business has been in a precarious position for some time prior to funding of the loan and the proceeds of Kapitus's loan were not used for its stated purpose.

21. In summary, the Debtor made affirmative misrepresentations during the application process, each of which Kapitus relied upon to lend money to LP.

C. **Debtor's Misrepresentations in the Agreement**

22. In the Agreement, the Debtor represented to Kapitus that the loan will be used exclusively for a business purpose and no other. Exh. A (Agreement) at 12 and at §1.14. Specifically, the Debtor represented to Kapitus that he will only use the loan proceeds for "working capital, business insurance (but not self-insurance programs), franchise fees, employee training, the purchase of equipment, inventory, business supplies and raw materials, the construction, renovation or improvement of facilities (but not the purchase of real estate). *Id.* at 12, ¶2.

23. Debtor also represented and agreed "not to create, incur, assume, or permit to exist, directly or indirectly, any additional cash advances, loans, lien on or with respect to any of the Collateral . . . ." *Id.* at 13.

24. Debtor also made the following representations and warranties to Kapitus via the Agreement, each of which Kapitus relied upon to lend money to LP:

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Borrower [LP] and Guarantor [Debtor] represent, warrant and covenant that as of this date and during the term of this Agreement:

2.1    **Financial Condition and Financial Information.** The financial statements which have been furnished to LENDER by Borrower and Guarantor, and such future statements which will be furnished hereafter at the request of LENDER, fairly represent the financial condition of Borrower and Guarantor at such dates, and since those dates there has been no material adverse change, financial or otherwise, in such condition, operation or ownership of Borrower or Guarantor. Borrower is current on any and all lease, rent or mortgage payments due. Borrower and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to LENDER. No material changes, financial or otherwise, in the condition, operation or ownership of Borrower are in any way expected or anticipated. Borrower has a continuing, affirmative obligation to advise LENDER of any material adverse change in its financial condition, operation or ownership. Borrower's failure to do so is a material breach of this Agreement.

. . .

2.6    **Borrower Depositing Account Agreement and Arrangements**. Without LENDER's prior written consent, Borrower will not (i) change the Account through which Borrower's receivables are settled; (ii) set up multiple bank accounts into which any of the Borrower's receivables are deposited or otherwise transferred, (iii) block or stop payment on LENDER debits initiated under this Agreement, (iv) permit any event to occur that could cause diversion of any of Borrower's receivables to another Account; (v) take any other action that could have any adverse effect upon Borrower's obligations under this Agreement. Borrower will batch out receipts with all payment processors on a daily basis. Any of the foregoing changes, actions or inactions shall be a material breach of this Agreement.

. . .

2.8    **No Bankruptcy or Insolvency**. Borrower is solvent, and no transfer of property is being made by Borrower or Guarantor and no obligation is being incurred by Borrower or Guarantor in connection with this Agreement with the intent to hinder, delay, or defraud either present or future creditors of Borrower or Guarantor . . . Borrower and Guarantor further and respectively warrant that neither anticipates filing or having any such voluntary or involuntary bankruptcy petition filed.

2.9    **Other Financing**. Borrower shall not enter into any arrangement, agreement or commitment, whether in the form of a purchase of (such as a merchant cash advance or factoring arrangement) a loan against, or the sale or

purchase of credits against, any receipts, cash deposits or future card or mobile payment sales with any party other than LENDER without LENDER's written permission.

2.10 **Unencumbered Assets**. Other than as previously disclosed to LENDER in writing, Borrower has good and marketable title to all assets, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of, LENDER.

. . .

2.13 **Sale of Business**. Borrower shall not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of LENDER, and (ii) the written agreement of any purchaser or transferee assuming all of Borrower's obligations under this Agreement pursuant to documentation satisfactory to LENDER.

2.14 **Accuracy of Information**. All information provided by Borrower and Guarantor to LENDER in this Agreement including the Security Agreement and Guaranty, and in all other LENDER forms is true, accurate and complete in all respects.

Exh. A (Agreement) at 6-7.

25. In addition, it was further represented in the Agreement that LP would only utilize one account acceptable to Kapitus (the "Account") and irrevocably authorized Kapitus to ACH debit the specific remittances from that Account until full payment of the loan. *Id.* at 3, §§ 1.1 and 2.6.

26. Kapitus justifiably relied on the above representations in the Agreement when it extended credit to LP.

27. Upon information and belief, Debtor made affirmative misrepresentations in the Agreement, each of which Kapitus relied upon to lend money to LP including, but not limited to, the following:

- misrepresented the financial condition of business and guarantors and omitted

material adverse changes in the condition, operation and ownership of the business (*see* Exh. A (Agreement) at §2.1);

- prevented payment of Kapitus's debits, permitted diversion of the business' receivables and engaged in actions that had an adverse effect upon LP's obligations under the Agreement (*see id.* at §§1.1; 2.6(iii-v));

- misrepresented that the business and guarantors were solvent (*see id.* at §2.8);

- entered into further merchant cash advance commitments and loans (*see id.* at §2.9);

- failed to use one account for the business and prohibited Kapitus from irrevocable access to the business funds (*see id.* at 3, §§ 1.1 and 2.6);

- failed to use the proceeds under the Agreement for business purposes (*see id* at 12 and at §1.14).

### D. Loan Funding and Debtor's Stop-Payment Order and Almost Immediate Default

28. In reliance on the representations made by the Debtor in the Application, the R&A, and the Agreement, Kapitus agreed to fund the loan on the terms and conditions set forth in the Agreement.

29. On or about December 19, 2019, Kapitus transferred the loan proceeds into the Account and pursuant to the Agreement the Debtor was to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus.

30. However, upon information and belief, Debtor neither had any intention to honor the Agreement nor to repay the loan.

31. Debtor almost immediately defaulted on his obligations under the Agreement and did not have sufficient funds in the Account to cover Kapitus payments under the

Agreement as early as March, 2020 effectively preventing the ACH payments to process and prohibiting Kapitus from collecting on the amounts rightly owed to it under the Agreement.

32. Kapitus is a creditor in this bankruptcy case in the amount of at least $188,824.84 as of the petition date, which total is comprised of contract balance of $184,572.00; default fees of $2,500 and interest of $1,752.84 (at the Virginia legal rate of 6% from 3/18/20 to 5/13/20).

33. Debtor's conduct demonstrates that the Debtor never intended to perform his obligations under the Agreement and obtained money from Kapitus by false pretenses, false statements, or actual fraud.

## COUNT I
### (Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A))

34. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

35. Debtor's liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

36. Debtor obtained money and services by false pretenses, false representation(s), and/or actual fraud within the meaning of 11 U.S.C § 523(a)(2)(A).

37. As more fully detailed herein, upon information and belief, the Debtor made material misrepresentations of fact including, but not necessarily limited to, representing that: (1) the Debtor and LP were not insolvent; (2) there were no material adverse changes, in the condition, operation or ownership of LP; (3) LP's financial condition was accurately reflected to Kapitus; (4) Debtor would use the loan amount for business purposes; (5) the LP/Debtor were not in arrears with any of their creditors; (6) the Debtor/LP did not and would not have an outstanding balance with any other merchant cash advance provider; and (7) LP would use

one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment.

38. Debtor made material omissions of fact that induced Kapitus into funding the loan.

39. Upon information and belief, at the time the representations and/or material omissions were made, Debtor knew that the Debtor's representations and omissions were false, untrue, misleading, and, as a direct and proximate cause of these intentional misrepresentations and omissions, Debtor knew that Kapitus would be induced to tender the loan amount LP.

40. Upon information and belief, Debtor intended to induce Kapitus to act or refrain from acting upon the Debtor's misrepresentations and/or material omissions, and Kapitus justifiably relied upon such false representations and omissions.

41. Kapitus suffered damages as a direct and proximate consequence of the misrepresentations made by the Debtor.

42. As a result of misrepresentations and fraud by the Debtor, the Debtor obtained from Kapitus, *inter alia,* over $192,000 in proceeds which would not have been authorized by Strategic if the misrepresentations have not been made, or if material facts that were omitted and concealed, were actually disclosed.

43. Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by, at the direction of or with the consent of the Debtor.

44. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(A), Debtor's debt to Kapitus is non-dischargeable. Kapitus is also entitled

to a money judgment against the Debtor according to its proof and its attorneys' fees and costs of suit incurred in prosecuting this Complaint along with interest at the statutory rate.

## COUNT II
### (Nondischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(B))

45. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

46. Debtor's liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

47. Pursuant to 11 U.S.C. §523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is nondischargeable.

48. Upon information and belief, LP, an insider of the Debtor, did obtain money from Kapitus by the following written, materially false statements respecting LP's financial condition on which Kapitus reasonably relied, among others, that (1) the Debtor and LP were not insolvent; (2) there were no material adverse changes, in the condition, operation or ownership of LP; (3) LP's financial condition was accurately reflected to Kapitus; (4) Debtor would use the loan amount for business purposes; (5) the LP/Debtor were not in arrears with any of their creditors; (6) the Debtor/LP did not and would not have an outstanding balance with any other merchant cash advance provider; and (7) LP would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment.

49. Upon information and belief, as fully detailed above, at the same time the representations were made, Debtor knew these representations were materially false, untrue

and misleading.

50. Debtor caused these false statements to be made in writing, including, but not limited to publishing such statements in the pre-funding documentations and Agreement.

51. LP is an insider of the Debtor, because, at the time, the Debtor served as owner, shareholder, officer and/or director of LP, and/or person in control of LP, within the meaning of "insider" under 11 U.S.C. § 101(31)(A)(iv).

52. Kapitus reasonably relied on these written statements made by the Debtor in deciding to transfer the funds to LP.

53. Kapitus suffered damages as a direct and proximate consequence of the materially false statements made by the Debtor.

54. As a result of these materially false written statements by the Debtor, the Debtor obtained from Kapitus, *inter alia*, the funds which would not have been authorized by Kapitus if the materially false statements had not been made.

55. Debtor's activities described above constitute obtaining money by materially false written statement regarding an insider's financial condition, on which Kapitus relied, and which the Debtor made with the intent to deceive.

56. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), Debtor's debt to Kapitus is non-dischargeable. Kapitus is also entitled to a money judgment according to its proof and its attorneys' fees and costs of suit incurred in prosecuting this Complaint along with interest at the statutory rate.

## COUNT III
### (Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))

57. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

58. Debtor's liability to Kapitus, as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning

of section 523(a)(4) of the Bankruptcy Code.

59. LP and the Debtor defaulted on their obligations under the Agreement almost immediately after funding.

60. Because of the insolvency of LP the Debtor had fiduciary obligations to Kapitus and its creditors.

61. Upon information and belief, the Debtor entered into the Agreement with the specific intent to transfer or hide the loan funds and collateral and prevent Kapitus from collecting the obligations owed to it.

62. Upon information and belief, the Debtor obtained the funding and took the funding by committing fraud and defalcation while acting in a fiduciary capacity as the sole owner and officer of LP.

63. Upon information and belief, the Debtor misappropriated portions of the funding and receivables for his own benefit by fraudulent intent or deceit.

64. Upon information and belief, the Debtor used the funds received and the receivables without explanation, reason or purpose relating to LP's business, and failed to use the funds for business materials as represented in the pre-funding documentations.

65. LP is an Alabama company. Under Alabama law, officers and directors of a corporation have fiduciary duties to the corporation's creditors when the corporation is insolvent or in the zone of insolvency.

66. When a company becomes insolvent, the directors stand in a trust relation towards creditors, and as trustees of corporate properties for the benefit of creditors. Hence, the directors of an insolvent corporation are placed in a fiduciary relation to its creditors.

67. Debtor was an officer and/or director of LP. Upon information and belief, LP

was insolvent at the time it received funds from the Kapitus, or became insolvent shortly thereafter. Therefore, Debtor owed fiduciary duties to manage LP's assets in trust for its creditors, including Kapitus.

68. Debtor's failure to manage LP's assets is a breach of fiduciary duty.

69. Upon information and belief, Debtor used his power as officer or director of LP for the purpose of obtaining a preference or advantage to himself.

70. Upon information and belief, Debtor misappropriated portions of the LP's receipts for his own benefit.

71. These were breaches of fiduciary duty.

72. Debtor's actions in violation of these fiduciary duties constitute legal fraud.

73. Virginia law governs the Agreement.

74. Under Virginia law, an express trust can be found through the parties' actions and does not need to be in writing. All that is necessary is the unequivocal intent that the legal estate be vested in one person, to be held in some matter or for some purpose on behalf of another. A trust is created if the intention is that the money be kept or used as a separate fund for the benefit of the payor or a third person.

75. An express trust is a fiduciary relationship with respect to property.

76. Here, the parties intended to and did enter into an express trust, and Debtor owed a fiduciary duty to Kapitus. Debtor was supposed to hold the business' receipts in the Account for Kapitus' benefit. Upon information and belief, he did not do so.

77. Kapitus sustained damages as a result of the Debtor's fraud and defalcation while acting as a fiduciary, their embezzlement and/or larceny of the funding and receivables.

78. Upon information and belief, all of the acts and omissions that constitute a

breach or default of the Agreement were performed or omitted by, at the direction of, or with the consent of, the Debtor and thus the Debtor is in breach of the Agreement giving Kapitus a right to recover damages.

79. The Debtor's obligation to Strategic is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is nondischargeable.

80. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), the Debtor's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein. Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint along with interest at the statutory rate.

## COUNT IV
### (Nondischargeability of Debt Pursuant to 11 U.S.C. §523(a)(6))

81. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein

82. Pursuant to Section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

83. Kapitus believes and alleges that the Debtor entered into the Agreement with the specific intent to divert the funds for his own use. In addition, upon information and belief, Debtor made false statements to Kapitus with the intent to induce Kapitus to advance funds.

84. Upon information and belief, within a short period after Kapitus transferred the funds to LP, the Debtor diverted the funds away from LP.

85. Further, upon information and belief, the Debtor willfully and maliciously executed the Agreement and represented to Kapitus that (1) the Debtor and LP were not insolvent; (2) there were no material adverse changes, in the condition, operation or ownership of LP; (3) LP's financial condition was accurately reflected to Kapitus; (4) Debtor

4811-6157-0759v2

15

would use the loan amount for business purposes; (5) the LP/Debtor were not in arrears with any of their creditors; (6) the Debtor/LP did not and would not have an outstanding balance with any other merchant cash advance provider; and (7) LP would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment.

86. Further, upon information and belief, the Debtor willfully and maliciously committed fraud or defalcation while acting in a fiduciary capacity and embezzled Kapitus' funds.

87. Debtor's activities described herein constitute willful and malicious conduct which resulted in damage to Kapitus.

88. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), Debtor's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein. Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint along with interest at the statutory rate.

## PRAYER FOR RELIEF

**WHEREFORE**, Kapitus requests judgment against Debtor as follows:

A. On its First Claim for Relief, for judgment against Debtor in the amount owed to Kapitus and determining that such judgment is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Debtor;

B. On its Second Claim for Relief, for judgment against Debtor in the amount owed to Kapitus and determining that such judgment is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Debtor;

C. On its Third Claim for Relief, for judgment against Debtor in the amount owed to Kapitus and determining that such judgment is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Debtor;

D. On its Fourth Claim for Relief, for judgment against Debtor in the amount owed to Kapitus and determining that such judgment is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Debtor;

E. Granting interest, attorneys' fees and costs herein incurred; and

F. Granting such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

/s/ *Rita L. Hullett*
Rita L. Hullett
1400 Wells Fargo Tower
420 20th Street North
Birmingham, AL 35203
205.250.8310
rhullett@bakerdonelson.com

**Counsel for Kapitus Servicing, Inc.**